# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MARC NUNEZ** | * | **CIVIL ACTION** |
| | * | |
| | * | **NO. 09-5445** |
| | * | |
| **EDWARD ROBIN, SR., ET AL.** | * | **SECTION "L"(2)** |

## ORDER & REASONS

Before the Court are Defendants Pearl Sand and Gravel, LLC, Brad Robin, Don Robin, Sr., Edward Robin, Sr., Edward Robin, Jr., and Robin Capital Holdings, LLC's motion for summary judgment[1] and Defendant Sand Specialties and Aggregates, LLC motion for summary judgment[2]. The latter motion adopts all arguments of the former. The Court heard oral argument on the motions of June 9, 2010. Having considered all memoranda and exhibits submitted by the parties, oral argument, and the relevant law, the Court is now ready to rule. For the following reasons, the motions are GRANTED.

## I.     BACKGROUND

Plaintiff Marc Nunez filed a complaint in federal court on August 4, 2009 asserting a claim under the Securities Exchange Act ("SEA") in addition to several state law claims including breach of contract, breach of fiduciary duty, conversion, and fraud.

Nunez entered into a joint venture with Mike Moncrief, and Defendants Brad Robin, Don Robin, Sr., Edward Robin, Sr., and Edward Robin, Jr. ("the Securities Defendants") to fund a mining

---

[1]Rec. Doc. No. 31.

[2]Rec. Doc. No. 36.

1

operation. Nunez alleges that the named Defendants induced him to buy into the venture and then did not contribute funds themselves which they had promised to contribute. Moncrief, who is not a named defendant, received a 50% ownership interest in the entity. Moncrief did not contribute any funds to the start up. The understanding was that he would contribute through his expertise in the mining field and his ongoing management of the mining operation. The other 50% interest was divided evenly amongst the five monetary investors (Nunez and "the Securities Defendants"), each receiving a 10% interest. Nunez alleges that the Securities Defendants expressly agreed that in order to attain the $4,000,000 in capital needed, each would be responsible for contributing $800,000. Nunez further alleges that he informed all parties that he could not contribute time, labor, or management to the LLC. Together, Nunez, Moncrief, and the Securities Defendants formed Sand Specialties and Aggregates, LLC ("SSA").

Nunez alleges that to date each Security Defendants has contributed only $244,150 each of the $800,000 promised. Nunez has contributed $342,900. Nunez alleges that he was enticed, to his detriment, to purchase his membership interest in SSA, and to invest capital into SSA based upon the Securities Defendants' fraudulent representations that they were each capable of generating their portion of the $4 million capital investment. Nunez alleges that he would not have purchased his membership interest nor invested capital had he been fully informed of the material facts (i.e. the Securities Defendants' inability to independently generate their share of capital). Further, a loan in SSA's name had to be executed as a result of Defendant's failure to provide capital. Nunez is one of the guarantors of this loan, along with three of the Securities Defendants. In addition, Nunez executed documents personally guaranteeing the loan. Nunez further alleges that since his falling out with the Securities Defendants, they have been actively mining on SSA property, not for the

2

benefit of SSA, but for the benefit of themselves or entities they formed outside of SSA.

## II. THE MOTIONS

The present motions argue that Nunez has no valid SEA claim, and thus, the Court has no subject matter jurisdiction. The Defendants previously filed motions to dismiss for lack of jurisdiction.[3] The Court denied the motions, and directed the parties to engage in limited fact discovery on whether Nunez has an actionable securities claim under federal law.[4] The parties have done so and the Court finds the present motions ripe for adjudication.

Defendants argue that Nunez has no federal securities claim, because he did not invest in a security, as defined by the SEA.[5] According to Defendant, Nunez played an active role in the management and development of SSA, and thus his ownership interest is not the type of investment contract which qualifies as a security under federal securities law.

Nunez responds that he was a passive investor who relied on Moncrief to run the operation based on Moncrief's expertise and experience. According to Nunez, his role was at most ministerial, and thus his ownership interest qualifies as a security for the purposes of the SEA.

Defendants argue that Nunez played a large role in the LLC, controlling SSA's checking account, entering into various agreements and contracts as SSA's "managing partner," and by hiring his own construction company, Southern Services & Equipment, Inc. ("SSE"), to do a substantial amount of work for SSA. Nunez disputes the characterization by Defendants of his role and argues

---

[3] Rec. Doc. Nos. 3 & 8.

[4] Rec. Doc. No. 19.

[5] Defendants also argue that even if Nunez's investment qualifies as a security under the SEA, Nunez's claim should be dismissed because Nunez cannot prove an actionable, material misrepresentation. The Court need not reach the merits of this argument.

that his actions were merely administrative and that he simply carried out tasks assigned to him by Moncrief.

At the summary judgment phase all disputed facts are decided in favor of Plaintiff, the non moving party. However, Nunez does not contest the following facts. Nunez was appointed "managing partner" of SSA in a June 11, 2008 resolution by SSA's members, and was given authority to "execute all documents and do all things necessary and proper to sell, encumber, purchase, alienate or enter into any contracts whatsoever with immovable (property) owned by [SSA] and otherwise exercise all authority as Managing Partner."[6] He signed a Letter of Intent for a lease as managing partner of SSA.[7] He was appointed SSA's registered agent.[8] Nunez and Pete Robin were the only individuals who had authority to sign checks for SSA and Nunez was the only individual to actually sign the checks.[9] Further, SSE, a company owned by Nunez and his wife, provided hundreds of thousands of dollars in services to SSA.[10] These services primarily included maintaining SSA's books and records.[11]

### III.  LAW & ANALYSIS

**A.  Standard of Review**

A district court can grant a motion for summary judgment only when the "'pleadings,

---

[6]*See* Rec. Doc. No. 39 at 12.

[7]*Id.* at 15.

[8]*Id.*

[9] Rec. Doc. No. 31-1 at 9.

[10]*Id.* at 11.

[11]*See* Rec. Doc. No. 39 at 16.

4

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56 (c)). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322 - 24, and Fed. R. Civ. P. 56(e)). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249 - 50 (citations omitted).

### B. Federal Securities Claim

The term "security" has been broadly defined in the Securities Exchange Act to include, among other things, "[an] investment contract." 15 U.S.C. § 78c. The Supreme Court first established a test for what is an investment contract is in *SEC v. W. J. Howey Co.*, 328 U.S. 293 (1946). In *Howey*, the Supreme Court held that an investment contract was "a contract, transaction

or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of a promoter or a third party." *Id.* at 298. The Supreme Court later modified the definition of an investment contract by removing the word "solely." *Int'l Bhd. of Teamsters v. Daniel,* 439 U.S. 551, 561 (1979). Put another way, an investment contract is "an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 852 (1975).

The Fifth Circuit has further refined the standard, finding that the proper inquiry is whether "the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." *Youmans v. Simon,* 791 F.2d 341, 345 (5th Cir. 1986) (quoting *Williamson v. Tucker*, 645 F.2d 404, 418 (5th Cir. 1981)). The *Williamson* court recognized that although general partnership or joint venture interests are ordinarily not securities because of the level of managerial control exercised by a general partner, in some limited circumstances a general partnership interest may be a "security."[12]

> Whether a general partner's or joint venturer's interest may be considered a security depends upon whether: (1) an agreement among the parties leaves so little power in the hands of the partner or venture that the arrangement in fact distributes power as would a limited partnership; or (2) the partner or venturer is so inexperienced and unknowledgeable in business affairs that he is incapable of intelligently exercising his partnership or venture powers; or (3) the partner or venturer is so dependent on some unique entrepreneurial

---

[12]While general partnerships and joint ventures are organized differently as compared to limited liability corporations, they are all considered under the blanket term "investment contract." Courts have routinely treated an ownership interest in an LLC as a general partnership for the purposes of determining whether the interest is a "security." *See, e.g., Sudo Properties, Inc. and Houma Sports Entm't, LLC v. Terrebonne Parish Consol. Gov't*, No. 04-2559, 2008 WL 2623000, at *2 -*4 (E.D. La. July 2, 2008).

> or managerial ability of the promoter or manager that he cannot replace the manager of the enterprise or otherwise exercise meaningful partnership or venture powers.

*Williamson*, 645 F.2d at 424. Nevertheless, there remains a strong presumption that a general partnership or joint venture interest is not a security. A party seeking to prove the contrary must bear a heavy burden of proof. *Id.*

Nunez argues that his reliance on Moncrief's expertise and experience in the mining and gravel industry was so great "that [Nunez was] in fact unable to exercise meaningful partnership powers." *Id.* at 424. It is clear that Nunez could not by himself entirely control the course and scope of SSA's business. He lacked the subject matter expertise of Moncrief. But Nunez had sufficient managerial control to ensure that other managers like Moncrief could neither harm nor dilute his investment. All expenditures were run through Nunez as he was the only partner to ever actually sign checks for SSA. Nunez would like to characterize his signing authority as merely ministerial but the facts in no way support this claim. Nunez was not simply Moncrief's administrative assistant. He was one of six individuals engaged in a joint venture. No one individual, including Moncrief, had a majority share. Nunez was appointed managing partner, signed *every* check (including checks to his own company), performed work for SSA in his capacity as owner of SSE, and signed documents as managing partner on behalf of SSA. Even accepting Plaintiff's argument that he lacked "decisive control over major decisions" as true, it is undeniable that Nunez preserved "the sort of influence which generally provide[d][him] with access to important information and protection against a dependence on others." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 241 (4th Cir 1988) (adopting the *Williamson* analysis and finding a general partnership interest did not qualify as a security where the partner had the ability to exercise his

partnership powers). Further,

> [Nunez's] argument would work a fundamental and unjustifiable expansion in the securities laws by bringing innumerable commercial ventures within their purview. Business ventures often find their genesis in the different contributions of diverse individuals-for instance, as here, where one contributes his technical expertise and another his capital and business acumen. Yet the securities laws do not extend to every person who lacks the specialized knowledge of his partners or colleagues, without a showing that this lack of knowledge prevents him from meaningfully controlling his investment.

*Robinson v. Glynn*, 349 F.3d 166, 171-72 (4th Cir 2003) (finding an investor's membership interest in an LLC permitted him enough control to prevent his investment from qualifying as a security under federal law).

Nunez argues that his reliance on Moncrief is exactly the situation the Fifth Circuit recognized in *Williamson* when they stated that "there are some circumstances where a partner or venturer is so dependent on some unique entrepreneurial or managerial ability of the promoter or manager that he cannot replace the manager of the enterprise," *Williamson*, 645 F.2d at 424. However, the court in *Williamson* was careful to qualify its language by noting that a manager is irreplaceable only when the partners are, "incapable, within reasonable limits, of finding a replacement manager." *Id.* at 225. Perhaps most telling is the fact that SSA is still a functioning mining operation today, without the help or participation of Moncrief.

The Court finds that, even after drawing all inferences in the light most favorable to Plaintiff, Nunez was an active participant in SSA, and thus his investment cannot qualify as a security under federal law.

### 3. Jurisdiction Over Remaining State Law Claims

Having dismissed the only federal claim asserted by Plaintiff, the Court hereby dismisses without prejudice any pendent state law claims so that Plaintiff may refile his claims in the

appropriate state court.  *See Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir 1989) ("Ordinarily, when the federal claims are dismissed before trial, the pendent state claims should be dismissed as well." *Id*.).

## IV.     CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment are hereby GRANTED.  Plaintiff's federal securities claim is dismissed with prejudice.  All pendent state law claims are hereby dismissed without prejudice.

New Orleans, Louisiana this 29th day of July, 2010.

_____
UNITED STATES DISTRICT JUDGE